**REBSAMEN INSURANCE, INC. Plaintiff**

v.

**MUTUAL HOLDINGS (BERMUDA) LTD.; Mutual Indemnity (Bermuda) Ltd. Defendants**

**No. 4:05CV397JMM.**

United States District Court,
E.D. Arkansas,
Western Division.

May 11, 2005.

---

James D. Lawson, III, Hilburn, Calhoon, Harper, Pruniski & Calhoun, Ltd., North Little Rock, AR, for Plaintiff.

Steven T. Shults, Jason Douglas Reed, Shults Law Firm LLP, Little Rock, AR, Douglas Y. Christian, Joshua A. Mooney, Ballard Spahr Andrews & Ingersoll, LLP, Philadelphia, PA, for defendants.

## *ORDER*

MOODY, District Judge.

Pending before the Court is the Defendant's Motion to Dismiss which seeks dismissal under Rules 12(b)(3) and/or 12(b)(6) of the Federal Rules of Civil Procedure, based upon a forum selection clause in the Shareholder Agreement between the parties that requires disputes arising from the agreement to be litigated exclusively in Bermuda. Alternatively, Defendants seek dismissal under Rule 12(b)(2) of the Federal Rules of Civil

Procedure, alleging that Defendants have insufficient contacts with Arkansas to permit an exercise of personal jurisdiction under Arkansas's long arm statute and the Due Process Clause of the Fourteenth Amendment. The Plaintiffs respond stating that it would be unfair and unreasonable to enforce the forum selection clause under the circumstances. Further, Plaintiffs state that the Defendants have sufficient contacts with the State of Arkansas to permit the exercise of personal jurisdiction over them by this Court.

## STATEMENT OF THE CASE

Plaintiff Rebsamen is an insurance corporation organized under the laws of the State of Arkansas, with its principal place of business located in Pulaski County, Arkansas. Defendant Mutual Holdings Ltd. is a holding company and the parent of Defendant Mutual Indemnity Ltd. Both are limited partnerships organized and existing under the laws of the country of Bermuda. The Defendants are in the business of providing insurance and reinsurance coverage, and their principal place of business is in Hamilton, Bermuda.

Rebsamen and Mutual Holdings entered into a Shareholder Agreement on or about June 1, 1997, to establish a commercial insurance program. The Shareholder Agreement was amended at least three times over the course of three years. Based on the amendments, the program was to run through September 1, 2006, which was defined as the "Redemption Date." The forum selection clause remained consistent throughout the amendments. Under the agreement, Rebsamen purchased a share of preferred stock from Mutual Holdings for the sum of $1,000.00, which Mutual Holdings was to repurchase on the Redemption Date. It was anticipated that a dividend would be declared on an annual basis due to investment income earned by Mutual Holdings and Mutual Indemnity based on investment funds received and underwriting gains realized each year. Rebsamen was to indemnify and hold Mutual Defendants harmless for all losses incurred under the program. To secure this obli-

gation, Rebsamen provided an irrevocable letter of credit in the amount of $418,519.00.

A dispute arose over whether the Defendants wrongfully failed to declare dividends in Plaintiff's favor pursuant to the Shareholder Agreement. The Plaintiff also alleges that the Defendants wrongfully made a draw against the letter of credit contrary to the terms of the Shareholder Agreement. Plaintiff filed suit in this Court claiming Defendants breached the Shareholder Agreement, the implied duties of good faith and fair dealing, and their fiduciary duty.[1]

The Defendants filed the Motion to Dismiss based upon the forum selection clause within the Shareholder Agreement, which states:

> This Agreement has been made and executed in Bermuda and shall be exclusively governed and construed in accordance with the laws of Bermuda and any dispute concerning this Agreement shall be resolved exclusively by the courts of Bermuda. (Exhibit A, par. 10 to Plaintiff's Complaint)

Further, Defendants argue that under Fed. R.Civ.P. 12(b)(2), this Court lacks personal jurisdiction over the Defendants because they are not licensed in this state; they do not conduct business in this state; they are registered to conduct business in Bermuda, and conduct all their business there; they do not own or lease property in this state; they have no employees in this state; they pay no taxes nor receive any mail in this state; and no employee or agent of theirs traveled to Arkansas during the negotiation of the Shareholder Agreement or has traveled to Arkansas in connection with it.

## STATEMENT OF LAW

A lack of venue challenge, based upon a forum-selection clause, is appropriately brought as a Fed.R.Civ.P. 12(b)(3) motion to dismiss. *Continental Ins. Co. v. M/V ORSULA,* 354 F.3d 603 (7th Cir.2003), citing *Frietsch v. Refco, Inc.,* 56 F.3d 825, 830 (7th Cir.1995); *Hugel v. Corporation of Lloyd's,* 999 F.2d 206, 207 (7th Cir.1993).

A motion to dismiss under Fed.R.Civ.P. 12(b)(6), should be granted only if it appears

1. The issue of the parties' obligations under the    contract are not before the Court at this time.

beyond doubt that the plaintiff can prove no set of facts to warrant a grant of relief. *Gilmore v. County of Douglas, State of Nebraska,* 406 F.3d 935 (8th Cir.2005), citing *Carter v. Arkansas,* 392 F.3d 965, 968(8th Cir.2004). A district court must accept the allegations contained in the complaint as true, and all reasonable inferences from the complaint must be drawn in favor of the nonmoving party. *Id.,* citing *Crumpley–Patterson v. Trinity Lutheran Hosp.,* 388 F.3d 588, 590(8th Cir.2004).

In *Rainforest Cafe, Inc. v. EklecCo L.L.C.,* 340 F.3d 544, 545 n. 5 (8th Cir.2003), the Court of Appeals notes that because both Rule 12(b)(3) and Rule 12(b)(6) were cited as bases for the motion to dismiss pursuant to a forum selection clause, the Defendant therein avoided any controversy over which Rule is the proper vehicle.

▇▇ Under Fed.R.Civ.P. 12(b)(2), when personal jurisdiction is challenged, the plaintiff has the burden to show that jurisdiction exists. *Smith v. Hobby Lobby Stores, Inc.,* 968 F.Supp. 1356, 1359 (W.D.Ark.1997), citing *Burlington Industries, Inc. v. Maples Industries,* 97 F.3d 1100, 1102 (8th Cir.1996). To defeat a motion to dismiss for lack of personal jurisdiction, the nonmoving party need only make a prima facie showing of jurisdiction. *Epps v. Stewart Information Services Corp.,* 327 F.3d 642, 647 (8th Cir. 2003) (citation omitted). The party seeking to establish the court's in personam jurisdiction carries the burden of proof and the burden does not shift to the party challenging jurisdiction. *Id.*

> Sufficient contacts exist for personal jurisdiction purposes when the defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there, and when maintenance of the suit does not offend traditional notions of fair play and substantial justice. In assessing the defendant's "reasonable anticipation," there must be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.

*Smith,* at 1359 citing *Soo Line R.R. Co. v. Hawker Siddeley Canada, Inc.,* 950 F.2d 526, 528–29 (8th Cir.1991).

▇▇ The five factor test established by the Eighth Circuit to determine the sufficiency of the defendant's contacts is as follows: (1) the nature and quality of contacts with the forum state; (2) the quantity of such contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) convenience of the parties. *Epps,* at 648. The first three factors are the most important. *Id.*

## ANALYSIS

▇▇ The Defendants argue that under Arkansas law, forum selection clauses are presumptively valid and will be enforced unless they are shown to be unfair and unreasonable. *Nelms v. Morgan Portable Bldg. Corp.,* 305 Ark. 284, 808 S.W.2d 314 (1991); *M/S Bremen v. Zapata Off–Shore Co.,* 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972). Plaintiffs claim that to enforce the clause would be unfair and unreasonable. *Bremen* describes "unfair" and "unreasonable" by stating, ". . . it should be incumbent on the party seeking to escape his contract to show that trial in the contractual forum will be so gravely difficult and inconvenient that·he will for all practical purposes be deprived o f his day in court. Absent that, there is no basis for concluding that it would be unfair, unjust, or unreasonable to hold that party to his bargain." *Bremen,* at 18, 92 S.Ct. 1907.

▇▇ Plaintiffs do not claim that they are the victims of fraud, overreaching, or unequal bargaining power. Instead, Plaintiff argues they were presented with a "take-it-or-leave-it" document, with ·no opportunity to modify its terms. *(Plaintiff's Brief in Support of Response to Mutual Defendants' Motion to Dismiss p. 3).* Plaintiff cites the Court to *Leasefirst v. Hill,* 1992 WL 79544 (Ark.App. 1992) [2], as an example of an adhesion-nature contract and thus unenforceable under Arkansas law. In that case, Arkansas residents purchased two trailers in Oklahoma, and

---

**2.** This case has not been designated for publica-   tion.

signed papers for the financing of the trailers without being made aware that they were submitting to the jurisdiction of the Michigan courts by doing so. The Court affirmed the trial court's denial of the request to register Michigan judgments in Arkansas, stating that the trial court found that the Arkansas residents did not voluntarily and knowingly agree to Michigan jurisdiction. Further, that there was no evidence of any negotiations between the parties or that the contract terms were discussed. *Id.*

Plaintiffs argue that because the contract was presented by the Defendants as "take-it-or-leave-it", then the *Leasefirst* analysis would apply. However, the case before this Court is not an adhesion contract. The parties herein are sophisticated, whereas the parties in *Leasefirst* were not. As business entities, these parties could have foreseen litigation over this contract, and plaintiffs do not deny they knew the forum selection clause existed.

Defendants point out several cases that persuade the Court. In *American Patriot Insurance Agency, Inc. v. Mutual Risk Management, Ltd.,* 248 F.Supp.2d 779 (N.D.Ill.2003), the forum selection clause in controversy is identical to the one at issue in our case. There, the district court held that even after a ten-month delay between the filing of the complaint and the defendant's motion to dismiss based on venue, the Shareholder Agreement is the document that links the various contracts together as well as the defendants to the plaintiffs; thus it is the controlling document and its forum selection clause binds the parties. *Id.* at 785. This ruling was upheld by the Seventh Circuit in *American Patriot Insurance Agency, Inc. v. Mutual Risk Management, Ltd.,* 364 F.3d 884 (7th Cir.2004). The identical forum selection clause was upheld in an opinion in the United States District Court in New Jersey that Defendant attached as Exhibit C to Mutual Defendants' Memorandum of Law in Support of their Motion to Dismiss. In that case, like the one before this Court, amendments were made to the Shareholder Agree-

ment, and no amendment involved the forum selection clause. The New Jersey Court held that the plaintiff failed to satisfy the heavy burden of proof required to strike as invalid the forum selection clause within the Shareholder Agreement.

■ The Plaintiffs argue that because agents of subsidiaries and companies affiliated with the Defendants came to Arkansas routinely to meet with them in furtherance of the administration of the Shareholder Agreement, then minimum contacts exist to allow personal jurisdiction over Defendants in this State. Each affidavit, while not specific about dates, gives names of different people working for the "marketing arm" of the Defendants or the "underwriting arm." Each of the two affidavit describes in vague terms teleconferences or dinner meetings, and one or two face-to-face meetings in Arkansas per year with employees of these "arms." Both affidavits state that these contacts were "considered necessary by both parties for the administration of the insurance program that was created and governed by the Shareholder Agreement." See Exhibits A and B to Plaintiff's Response to Mutual Defendants' Motion to Dismiss.

In applying the alleged contacts to the three most important factors of the Eighth Circuit's minimum contacts test, the Court finds the following: (1) The nature and quality of these contacts is vague. (2) The number of contacts is few. (3) It is unclear the relation of the cause of action to the alleged contacts.[3]

## CONCLUSION

Based upon the foregoing, the Defendants' Motion to Dismiss is granted pursuant to Fed.R.Civ.P. 12(b)(3) and 12(b)(2). (# 4)

**3.** In order to establish personal jurisdiction, the *Epps* Court further discusses the necessity of piercing the corporate veil by establishing that the nonresident parent corporation controlled

and dominated the affairs of the in-state subsidiary. However, none of the entities named in the affidavits herein are alleged to have been in-state subsidiaries.